**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**CORY ZENNAMO,**

                **Plaintiff**

      **v.**                                      **6:21-CV-840**
                                                **(TJM/TWD)**

**COUNTY OF ONEIDA, OFFICE OF**
**THE ONEIDA COUNTY EXECUTIVE,**
**ANTHONY J. PICENTE, JR., OFFICE**
**OF THE ONEIDA COUNTY PUBLIC**
**DEFENDER, FRANK J. NEBUSH, JR.,**
**ONEIDA COUNTY ATTORNEY'S OFFICE,**
**PETER M. RAYHILL,**

               **Defendants.**
_____

### DECISION & ORDER

      Before the Court is Defendants' motion to dismiss.  See dkt. # 10.  The parties

have briefed the issues and the Court conducted oral argument.

**I.     Background**

      This cases arises out of Plaintiff Cory Zennamo's employment with the Oneida

County Public Defender's Office.  See Complaint ("Cmplt."), dkt. # 1, at ¶ 5.  He worked

there from February 1, 2010 until July 27, 2020.  Id.  Plaintiff claims that, during this

employment, he "developed an exceptional reputation within the office, among the judges

before whom he practiced, and within the legal community as a whole."  Id. at ¶ 12.

Plaintiff took "on the most challenging cases when the need arose and worked up from the

City Courts section to handling the most violent and serious crimes."  Id.  Defendant Frank

1

Nebush, the Oneida County Public Defender, often "solicited trusted assistance from the Plaintiff, requesting his representation for close friends or family members, for the teaching of CLE courses and to handle matters that other attorneys were unable to complete." Id.

Plaintiff relates that attorneys in the Oneida County Public Defenders office are bound by the New York Rules of Professional Conduct, including Rule 1.6, "which requires that client information and files be confidential and protected from the view of third parties." Id. at ¶ 13. Included in that confidentiality requirement is a mandate that "servers, data and printer be separate and secure from other Oneida County departments and department heads." Id. Plaintiff further alleges that the Office employs a social worker who obtains information directly from healthcare providers. Id. Such information, Plaintiff contends, is subject to the protections of the Health Insurance Portability and Accountability Act ("HIPAA"). Id. The Office, which represents criminal defendants, must also keep client information separate "to avoid the impropriety of one single entity being bound by commitments to multiple parties in a criminal action." Id.

During Plaintiff's employment, Judges, the District Attorney, clients, and treatment providers all sent privileged information via email. Id. at ¶ 14. "Plaintiff understood this email system to be secure from third party surveillance, accessible only by Nebush." Id. Plaintiff also believed that the server that stored "all files, discovery, attorney work product, medical records, mental health records, social security numbers and other client-related confidential information was digitally stored on a server hosted by Oneida County, but which was allegedly secure from third party access, including the observation of any other Oneida County department." Id.

2

Plaintiff was terminated on July 27, 2020.  Id. at ¶ 15.  He alleges that his termination came "in retaliation for an email warning sent to Nebush voicing concern about inappropriate and surreptitious access by the Office of the Oneida County Executive, [Oneida County Executive, Defendant Anthony J.] Picente, [Oneida County Attorney, Defendant Peter M.] Rayhill, and the Oneida County Attorney's Office to digital client files, attorney work product, and emails[.]" Id.  Such content, Plaintiff claims, should have been kept confidential.  Id.

Plaintiff alleges that Picente admitted at a July 24, 2020 meeting that he had access to material on the Assistant Public Defender computer.  Id. at ¶ 16.  This material included "files and emails which were obtained without said employee's knowledge or consent and without the knowledge or consent of Nebush."  Id.  That meeting made clear that Oneida County, the Office of the Oneida County Executive, Picente, Rayill, and the County Attorney's Office "had access to all files, folders and content on the Oneida County Public Defender client server" and to emails sent by staff and attorneys at the Public Defender's Office.  Id.  Picente allegedly admitted that the Oneida County IT department had accessed the emails and Public Defender files "for files pertaining to legal practice outside of Oneida County Public Defender employment."  Id.

This "breach of confidential information" caused Plaintiff to email Nebush "with supporting ethics rules and documentation on July 7, 2020, voicing concern."  Id. at ¶ 17.  Plaintiff expressed concerns about violations of Rule 1.6 and HIPAA.  Id.  Nebush "heatedly criticized Plaintiff's concerns and reused to [continue] the conversation indicating he did not have time to deal with it right now."  Id.  Plaintiff told Nebush that "he would not sacrifice the integrity of his representation or his law license so that Oneida

3

County, Picente, the Oneida County Attorney, Rayhill and the Office of the Oneida County Executive could monitor confidential information." Id.  An hour later, Nebush sent an email to Plaintiff that explained that the Public Defendant's "system had not been compromised." Id. at ¶ 18.  Nebush stated that "he would look into obtaining an encrypted email system he had previously used when sending protected emails to expert witnesses." Id.

"Within an hour" of receiving this email, the Oneida County IT Department contacted Plaintiff to inform him that his computer system had been compromised by a virus and needed repair. Id.  Plaintiff responded that he was not permitted to supply his computer, but IT "insisted, explaining it would infect the entire Oneida County computer network." Id.  Plaintiff responded that IT had permission only to fix the virus issue, and could not "access client files or data because it was protected by attorney client privilege and in some cases, HIPAA." Id.  Plaintiff's computer "was sent away without Plaintiff's permission and analyzed by an unknown party, the details of which were delivered to the Office of the Oneida County Executive, Pincente, Rayhill, and the Oneida County Attorney's Office." Id.

The Office of the Oneida County Executive sent Plaintiff an email on July 26, 2020 "asking about letters of appearance, some draft documents, and other legal related content" that the Office alleged "were on Plaintiff's computer." Id. at ¶ 19.  Though the County Executive had not included Nebush in the initial email, Plaintiff copied Nebush on the response he sent on the evening of July 26, 2020. Id.

Around 2:51 p.m. on July 27, 2020, Nebush contacted Plaintiff to let him know that the Office of the Oneida County Executive had told Nebush to terminate Plaintiff's

4

employment immediately.  Id. at ¶ 20.  Plaintiff asked Nebush why he was terminated and

"Nebush indicated he was not aware and they did not inform him."  Id.  Plaintiff pressed

Nebush about why Plaintiff, a highly successful attorney, would be terminated.  Id.

Nebush "indicated he was instructed to do so by the Office of the Oneida County

Executive and intended to comply with the request."  Id.  Plaintiff alleges that the Public

Defender's Office has not terminated any attorneys in the office during Plaintiff's

employment or after his termination.  Id. at ¶ 21.

 In August, 2020, Nebush filed a grievance against Plaintiff with the ethics

committee of the Fifth Judicial District.  Id. at ¶ 22.  He made "a number of false claims."

Id.  Plaintiff alleges that "[t]he matter was dismissed as unfounded."  Id.

 Plaintiff's Complaint raises five causes of action.  Count One is a First Amendment

claim brought pursuant to 42 U.S.C. § 1983 against all defendants.  Plaintiff alleges that

Defendants retaliated against him for raising matters of public concern "regarding

unethical and inappropriate activities occurring within the Oneida County Public Defender

and the intentional advancement of said unethical actions by Defendants."  Id. at ¶ 24,

Plaintiff spoke on a matter of public concern and Defendants responded by firing him.  Id.

Count Two raises essentially the same claim under Article 1, Section 8 of the New York

Constitution.  Count Three raises claims against Oneida County, the Office of the County

Executive, Picente, and the Office of the County Attorney for a violation of Plaintiff's

Fourth Amendment rights.  Plaintiff contends that the search of his computer hard drive

without his permission violated his rights.  Id. at ¶ 28.   Count Four alleges that the County

of Oneida, the Office of the County Executive, Picente, and Rayhill engaged in fraud to

further their digital trespass and Fourth Amendment violations.  Plaintiff contends that they

falsely represented to him that he had a virus on his computer in order to obtain confidential information secured on that computer.  Id. at ¶ 30.  Count Five alleges that Defendants violated New York Labor Law § 740 when they terminated him for reporting violations of the Rules of Professional Conduct and HIPAA.  Id. at ¶ 32.

Defendants then filed the instant motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

## II.    LEGAL STANDARDS

Defendants seek dismissal for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).  "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."  Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000).  The Court may consult matters outside the pleadings in resolving a 12(b)(1) motion.  Id.  "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists."  Id.

Defendants also seek dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6).  Defendants argue that Plaintiff has not stated a claim upon which relief could be granted, even if all factual allegations in the complaint were proved true.  In addressing such motions, the Court must accept "all factual allegations in the complaint as true, and draw[] all reasonable inferences in the plaintiff's favor."  Holmes v. Grubman, 568 F.3d 329, 335 (2d Cir. 2009).  This tenet does not apply to legal conclusions.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id. at 678.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to

state a claim to relief that is plausible on its face." Id. (quoting Bell Atl. v. Twombly, 550 U.S. 544, 570 (2007)).

## III.   ANALYSIS

Defendants raise several grounds for dismissal, which the Court will address in turn.

### A.   Municipal Departments

Defendants first argue that, since the County has been named as a Defendant, any claims against municipal departments are redundant and should be dismissed.  Thus, Defendants Office of the County Executive, Office of the Public Defender, and Office of the County Attorney should be dismissed from the case.   Plaintiff does not respond to this argument.

The Court will grant the motion in this respect.  "Under New York law, departments that are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality and, therefore, cannot sue or be sued." Rose v. County of Nassau, 904 F.Supp.2d 244, 247 (E.D.N.Y. 2012).  Defendants Office of the County Executive, Office of the Public Defendant, and Office of the County Attorney will be dismissed from the case.

### B .   First Amendment Retaliation Claim

Defendants contend that Plaintiff has not alleged that he spoke as a private citizen on a matter of public concern, and that his First Amendment retaliation claim should therefore be dismissed.  Even if he had spoken on a matter of public concern, Defendants contend that Plaintiff has not alleged that his speech caused his firing and the claim

7

should be dismissed on that basis.

"The Court has made clear that public employees do not surrender all their First Amendment rights by reason of their employment.  Rather, the First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern."  Garcetti v. Ceballos, 547 U.S. 410, 417 (2006).  "The First Amendment limits the ability of a public employer to leverage the employment relationship to restrict, incidentally or intentionally, the liberties employees enjoy in their capacities as private citizens."  Id. at 419.  "So long as employees are speaking as citizens about matters of public concern, they must face only those speech restrictions that are necessary for their employers to operate efficiently and effectively."  Id.

"Whether public employee speech is protected from retaliation under the First Amendment entails two inquiries: (1) 'whether the employee spoke as a citizen on a matter of public concern' and, if so, (2) 'whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public.'"  Ruotolo v. City of New York, 514 F.3d 184, 188 (2d Cir. 2008) (quoting Garcetti v. Ceballos, 547 U.S. 410, 418 (2006)).

"Whether an employee's speech addresses a matter of public concern is a question of law for the court to decide, taking into account the content, form, and context of a given statement as revealed by the whole record."  Lewis v. Cowen, 165 F.3d 154, 163 (2d Cir. 1999).  A court is to "focus on the motive of the speaker and attempt to determine whether the speech was calculated to redress personal grievances or whether it had a broader public purpose."  Id. at 163-64.  "'To constitute speech on a matter of public concern, an employee's expression must 'be fairly considered as relating to any matter of political,

social, or other concern to the community.'" Gorman v. Rensselaer Cty., 910 F.3d 40, 45 (2d Cir. 2018)(quoting Jackler v. Byrne, 658 F.3d 225, 236 (2d Cir. 2011)).  If the "speech . . . 'primarily concerns an issue that is personal in nature and generally related to the speaker's own situation, such as his or her assignments, promotion, or salary'" then the speech "'does not address matters of public concern.'"  Id. (quoting Jackler, 658 F.3d at 236).  The speech in question might "[hint] at some broader public purpose[,]" but "retaliation against the airing of generally personal grievances is not brought within the protection of the First Amendment by 'the mere fact that one or two of [a public employee's] comments could be construed broadly to implicate matters of public concern.'" Ruotolo v. City of New York, 514 F.3d 184, 190 (2d Cir. 2008) (quoting Ezekwo v. New York City Health & Hosp. Corp., 940 F.2d 775, 781 (2d Cir. 1991)).  As such, "'[a] public employee may not transform a personal grievance into a matter of public concern by invoking a supposed popular interest in the way institutions are run.'"  Id. (quoting Boyce v. Andrew, 510 F.3d 1333, 1343 (11th Cir. 2007)).   "The speaker's motive is a factor to consider but 'is not dispositive in determining whether his speech addresses a matter of public concern.'"  Golodner v. Berliner, 770 F.3d 196, 202 (2d Cir. 2014) (quoting Sousa v. Roque, 578 F.3d 164, 173 (2d Cir. 2009)).

The Court finds that Plaintiff has stated a claim that he suffered retaliation for speaking as a citizen on a matter of public concern.  Plaintiff's allegations, accepted as true, indicate that he spoke on an issue that was not just a workplace grievance.  He did not speak to complain about how he was treated or about operations and decisions in the workplace related to how employees perform their jobs.  Plaintiff instead alleges that he spoke on matters about which the public had a legitimate concern: the privacy of data

about clients of the Public Defender's Office and the ability of County officials to access such material on computers that should have been kept separate from such officials. The public certainly has an interest in whether the work product and confidential information held by defense counsel could be accessed by the municipality prosecuting members of the public.

Plaintiff has also alleged facts sufficient to support the other elements of a First Amendment retaliation claim. "'To survive a motion for summary judgment on a First Amendment retaliation claim' in the public employment context, 'the plaintiff must present evidence which shows '[1] that the speech at issue was protected, [2] that he suffered an adverse employment action, and [3] that there was a causal connection between the protected speech and the adverse employment action.'" Nagle v. Marron, 663 F.3d 100, 105 (2d Cir. 2011) (quoting Cotarelo v. Vill. of Sleepy Hollow Police Dept., 460 F.3d 247, 251 (2d Cir. 2006)). Once the plaintiff presents such evidence, "the defendant has an opportunity to show by a preponderance of the evidence that it would have taken the same adverse employment action even in the absence of protected conduct.'" Id. (quoting Morris v. Lindau, 196 F.3d 102, 110 (2d Cir. 1999)).

Plaintiff has alleged that he had a superb reputation as a public defender before raising his concerns about the adequacy of protections for client data, and that only after he raised these issues did Defendants begin to question his performance. He has alleged he lost his job. He has also alleged a causal connection between his firing and his speech on a matter of public concern. The Court will therefore deny the motion in this respect.

### C.   New York Constitutional Claim

Defendants also seek dismissal of Plaintiff's claims brought pursuant to the New

York Constitution.  Defendants first argue that the Court should dismiss such claims against the County pursuant to Federal Rule of Civil Procedure 12(b)(1) because Plaintiff failed to comply with the notice provisions contained in Section 50-e of the New York State General Municipal Law.  That law requires service of a notice of claim within ninety days after the claim arises.  Section 52 of the New York County Law has the same requirement. Defendants argue that New York courts strictly construe these requirements and dismiss claims that fail to comply.

"To enable authorities to investigate, collect evidence and evaluate the merit of a claim, persons seeking to recover in tort against a municipality are required, as a precondition to suit, to serve a Notice of Claim." Brown v. City of New York, 95 N.Y.2d 389, 392 (N.Y. 2000).  "The test of the notice's sufficiency is whether it includes information sufficient to enable the city to investigate the claim." O'Brien v. Syracuse, 54 N.Y.2d 353, 358 (N.Y. 1981).  A notice should "set forth, among other things, 'the nature of the claim,' and 'the time when, the place where, and the manner in which the claim arose.'" Vargas v. City of New York, 105 A.D.3d 834, 836 (2d Dept. 2013) (quoting Brown, 95 N.Y.2d at 393).  A notice meets the requirements when "'the notice describes the accident with sufficient particularity so as to enable the defendant to conduct a proper investigation thereof and to assess the merits of the claim.'" Id. (quoting Palmer v. Society for Seamen's Children, 88 A.D.3d 970, 971 (2d Dept. 2011)).  "The New York Court of Appeals has held that the notice of claim provisions of the General Municipal Law § 50-I are applicable to a cause of action for 'constitutional torts' in violation of the New York State Constitution." Pratt v. Indian River Cent. Sch. Dist., 803 F.Supp.2d 135, 146 (N.D.N.Y. 2011) (citing 423 S. Salina Steet, Inc. v. City of Syracuse, 68 N.Y.2d 474, 489,

11

n.5 (N.Y. 1986)).   While notice is required, "[t]he statute is remedial and should be

liberally construed."  Application of Charlemagne, 277 A.D. 689, 692 (1st Dept. 1951).

Defendants argue that the notice of claim fails to put them on notice of any alleged

New York constitutional violation.  Defendants point to the Notice of Claim that Plaintiff

filed, which states that:

> This claim is for the financial damages and losses of Cory Zennamo arising out of
> an unlawful termination, First Amendment violations of the United States
> Constitution, violation of 42 U.S.C. § 1983, fraud, fraud in the inducement, lost
> wages, wage and hour violations, failure to adequately notify of termination of
> benefits, Whistleblower retaliation, digital trespass, libel and slander, effectuated by
> Oneida County, its agents and servants, on or about July 27, 2020.

While Defendants acknowledge that failing to specifically reference the New York

Constitution is not necessarily fatal to the claim, they argue that none of the facts alleged

in the Notice "mention any facts that could possibly suggest" such a claim.

Plaintiff's description of the acts giving rise to his claim, Defendants insist, does not

provide any allegations that would support his New York Free Speech claim.  The

description states:

> The incident occurred around 2:00 PM on Monday, July 27, 2020, when Cory
> Zennamo was wrongly terminated from his employment with the Oneida County
> Public Defender's Office in violation of the First Amendment and Whistleblower
> retaliation protection.  Upon termination while obtaining final payout, information
> made it clear that the County had refused to pay wages to Zennamo as owed for
> work 35 hours and overtime in violation of the New York State labor laws.

Defendants argue that Plaintiff's claim in this respect should be dismissed because he has

not "generally [pled] in his Notice of Claim a free speech violation under the New York

State Constitution or facts that would suggest such a cause of action should result in a

similar ruling dismissing such claims."  Plaintiff has thus failed to comply with notice

provisions in New York law, Defendants claim, and this cause of action should be

dismissed.

The Court will deny the motion in this respect as well. Plaintiff's notice, related above, described the incident giving rise to his claim in sufficient detail for the Defendants to understand the events that gave rise to that claim, and to investigate whether Defendants violated Plaintiff's constitutional rights by retaliating against him for speaking on a matter of public concern.  This is especially so because he clearly provided notice of claim for a Section 1983 First Amendment retaliation claim, and the parties agree that the standard for New York and federal claims on the issue are the same.

The Defendants further argue that, even if the Court does not conclude that the Plaintiff's Notice of Claim was insufficient, the standard for a New York Constitutional claim is the same as a First Amendment retaliation claim under the United States Constitution.  Defendants contend that the Court should dismiss the New York Constitutional claims for the same reason that the Court should dismiss the federal claims. The Court will deny the motion in that respect for the reasons stated above.

### D.     Fourth Amendment Claim

Defendants next argue that the Court should dismiss Plaintiff's Section 1983 Fourth Amendment claim because Plaintiff lacked a reasonable expectation of privacy in material stored on his work computer.  The County had clear warnings on log-in about the lack of privacy in such County-issued devices, and Plaintiff cannot claim he had any sort of an expectation of privacy that would implicate the Fourth Amendment.

"'The Fourth Amendment protects individuals from unreasonable searches conducted by the Government, even when the Government acts as an employer.'"

13

Leventhal v. Knapek, 266 F.3d 64, 72-73 (2d Cir. 2001) (quoting Nat'l Treasury Employees Union v. Von Raab, 489 U.S. 656, 665 (1989)).  When the government is involved in a search as an employer, "the Fourth Amendment's protection against 'unreasonable' searches is enforced by 'a careful balancing of governmental and private interests.'" Id. (quoting New Jersey v. T.L.O., 469 U.S. 325, 341 (1985)).  "A public employer's search of an area in which an employee had a reasonable expectation of privacy is 'reasonable' when 'the measures adopted are reasonably related to the objectives of the search and not excessively intrusive in light of' its purpose" Id. (quoting O'Connor v. Ortega, 480 U.S. 709, 726 (1989)).

Defendants argue that Plaintiff's Fourth Amendment claim must fail because he did not have a reasonable expectation of privacy in the information on his computer. Defendants seek to apply four factors stated in In re Asia Glob. Crossing, Ltd., 322 B.R. 247, 257 (Bank. S.D.N.Y. 2005), in evaluating whether Plaintiff had a reasonable expectation of privacy in his work devices.  Defendants point out that district courts in this Circuit have applied that test, including some in the Northern District.  The test applies four factors:

> (1) does the corporation maintain a policy banning personal or other objectionable use, (2) does the company monitor the use of the employee's computer or e-mail, (3) do third parties have a right of access to the computer or e-mails, and (4) did the corporation notify the employee, or was the employee aware, of the use and monitoring devices?

Defendants contend that applying this test demonstrates that Plaintiff did not have a legitimate expectation of privacy in his devices.  As to the first factor, Defendants point to the Oneida County Information Technology Acceptable Use Policy ("AUP") to demonstrate that the County has a policy banning personal or other objectionable use.  That policy,

14

Defendants claim, also demonstrates that the County monitors personal use.  The policy also permits Oneida County to access an employee's computer and emails, satisfying the third factor.  As to the fourth factor, Defendants argue that employees are reminded every time they log in that the County monitors use of devices.

The Court will deny the motion in this respect as well.  Even considering the AUP policy and practices that the Defendants provide, the Court finds that Plaintiff has plausibly alleged that he had a reasonable expectation of privacy.  Whatever the AUP says, Plaintiff's Complaint alleges that:

> Defendants Picente, Office of the Oneida County Executive, Oneida County and the Oneida County Attorney conspired to unlawfully obtained [sic], search and distribute private data of Plaintiff saved on a computer hard drive in violation of the Fourth Amendment of the United States Constitution.  Said Defendants directed members fo the IT Department to lie to Plaintiff about a 'virus' infecting Plaintiff's computer as a means to obtain said machine to search the same for protected information and content created in the course of client representation in the Oneida County Public Defender's Office.  Due to the protected nature of attorney client speech and the legal and ethical requirements of attorneys in the State of New York to protect client confidence, Plaintiff had a legitimate expectation of privacy in the content of the computer system used in his employment through the Oneida County Public Defender's Office. Said Defendants employed a third party to indiscriminately dump the entire contends of said computer system without a limited scope to said search.  Moreover, the search was not with the permission or knowledge of Nebush.  Plaintiff gave limited authority to the IT department to clear the threat only and not to review or otherwise interact with any other files on the system.  The search was unlawful at its onset as the members of the IT department were directed to induce Plaintiff to turn over the Computer, through fraudulent representations, with lies about computer viruses and the potential for harm to client data and the entire County network so that the Fourth Amendment rights of Plaintiff could be violated.

Complt. at ¶ 28.  Accepting Plaintiff's allegations as true, the existence of the AUP is not dispositive on the issue of whether the Plaintiff had a reasonable expectation of privacy in the contents of his computer files.  Plaintiff alleges that Defendants took steps to convince him to provide them with a computer that he did not expect them to have access to.  The

15

Defendants allegedly did not use the AUP to get access to the computer, but instead employed a ruse.  Discovery will be necessary to determine whether Plaintiff's expectation of privacy was reasonable, and what role the AUP played in that expectation.

### E.    Fraud Claim

Defendants next argue that the Court should dismiss Plaintiff's fraud claim, which relates to the reasons he supplied Defendants with his computer.  The fraud claim arises out of an allegation that Defendants fraudulently induced him into turning over his work-related computer.  Defendants argue that this claim cannot lie because Plaintiff has not alleged any violation of his Fourth Amendment rights, and thus he cannot allege any violation through fraudulent inducement.  They do not cite any case law that relates to fraudulent inducement or the relationship between fraudulent inducement and constitutional violations.  They do not mention the heightened pleading standard for fraud under Rule 9(b).  Even if the Court finds that Plaintiff stated a fraud claim, Defendants argue that the claim should be dismissed against Rayhill because Plaintiff has not pled any personal involvement for him on this claim.  Plaintiff purports to respond to Defendants' arguments in this respect, but he does not explain how he has pled fraud nor does he address the argument that Rayhill was not involved in any fraud claims.  Defendants argue that this failure to offer any substantive argument should cause the Court to conclude that Plaintiff concedes the motion.[1]

Plaintiff's fraud claim alleges:

---

[1]The Court notes that Plaintiff's briefing, despite failing to address the issue of fraud, does argue that the Court should deny the motion with respect to Count Four, which alleges fraud.

16

> Defendants Picente, Office of the Oneida County Executive, Oneida County and the Oneida County Attorney direct[ed] the IT Department to fraudulently represent a current danger regarding a potential virus on the Plaintiff's computer system to unlawfully obtain data secured on said system without the permission of Plaintiff. Accordingly, the Defendants listed above directed members of the IT department to make a material misrepresentation of fact regarding a virus on the Plaintiff's computer, knowing said representation was false while intending to induce the Plaintiff to rely on [a] false statement of the IT Department.  Due to the status of the IT Department and the importance of keeping the client data on Plaintiff's computer safe from third parties who may attempt to improperly access said data, Plaintiff justifiably relied on said representations when turning over the computer to his detriment.

Comptl. at ¶ 30.

In New York "in a claim for fraudulent misrepresentation, a plaintiff must allege 'a misrepresentation or a material omission of fact which was false and known to be false by defendant, made for the purpose of inducing the other party to rely on it, justifiable reliance of the other party on the misrepresentation, and injury.'" Mandarin Trading Ltd. v. Wildenstein, 16 N.Y.3d 173, 178 (N.Y. 2011) (quoting Lama Holding Co. v. Smith Barney Inc., 88 N.Y.2d 413, 421 (1996)).

Defendants do not discuss the law in this respect.  Instead, they argue that, because Plaintiff does not have a Fourth Amendment claim, he cannot have a fraud claim. Since the Court has denied Defendants' motion with respect to the Fourth Amendment claim, the Court will also deny the motion with respect to the fraud claim.   The Court agrees with the Defendants, however, that Plaintiff has not alleged any conduct on the part of Defendant Rayhill that amounted to fraud.  The Court will grant the motion on this claim with respect to Defendant Rayhill.

### F.    Labor Law § 740 Claim

Defendants next argue that Plaintiff's claim brought pursuant to Labor Law § 740

17

should be dismissed.  That claim arises out of Plaintiff's allegation that Defendants fired him for raising concerns about improper access to confidential information that violated the Rules of Professional Conduct.

Defendants point to the text of Labor Law § 740, which provides a cause of action for an employee whose employer retaliates against him because that employee "discloses, or threatens to disclose, to a supervisor or to a public body an activity, policy or practice of the employer that is in violation of law, rule or regulation which violation creates and presents a substantial and specific danger to the public health and safety."  N.Y. Labor Law § 740(2)(a).  Citing to New York case law, Defendants argue that a plaintiff raising a claim under this law must point to a "substantial and specific danger to the public health and safety" that he disclosed or threatened to disclose.  Further, a plaintiff must allege that there was "not only an actual, as opposed to a possible violation, but also an actual and substantial present danger to the public health.  Reasonable belief as a basis for protection under Labor Law § 740 will not suffice."  Quoting Remba v. Federation Empl. & Guidance Serv., 149 A.D.2d 131, 135 (1st Dept. 1989).

Under the version of the Whistleblower statute in place at the time of the events alleged in this case,[2] New York courts have concluded "in order to recover under a Labor

_____

[2]As amended effective January 26, 2022, New York Labor Law § 740(2)(a) prohibits retaliation against an employee who "discloses, or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer that the employee reasonably believes is a violation of law, rule or regulation or that the employee reasonably believes poses a substantial and specific danger to the public health or safety." N.L. LABOR LAW § 740(2)(a).  This version permits a claim to go forward when an employee reports a violation of a law, rule or regulation, whether or not there exists a substantial risk to public health or safety.  Plaintiff's Complaint alleges that he "identified violations of the Rules of Professional Conduct and HIPAA occurring within Oneida

(continued...)

Law § 740 theory, the plaintiff has the burden of proving that an actual violation occurred, as opposed to merely establishing that the plaintiff possessed a reasonable belief that a violation occurred[.]" Webb-Weber v. Community Action for Human Servs., Inc., 23 N.Y. 3d 448, 452 (N.Y. 2014). The plaintiff also must prove that the violation was "of the kind that 'creates a substantial and specific danger to the public health or safety.'" Id. at 453 (quoting Remba, 76 N.Y.2d at 802). That version of the statute "ma[de] it quite clear that it was meant to protect only the reporting of a specific kind of illegal activity, namely, one that creates and presents a substantial and specific danger to the public health and safety." Leibowitz v. Bank Leumi Trust Co., 152 A.D.2d 169, 175 (2d Dept. 1989) (internal quotations omitted). In the medical context, for instance, a Whistleblower Act claim does not lie when a defendant's "alleged wrongdoing may have presented a danger to the health or safety of the individual patient, but did not threaten the health and safety of the public at large." Kern v. DePaul Mental Health Servs., 152 A.D.2d 957, 957-58 (4th Dept. 1989); see also, Easterson v. Long Island Jewish Medical Center, 156 A.D.2d 636, 637 (2d Dept. 1989) ("Even assuming that the disclosure of the medical records was in violation of the cited provisions of the Education Law and regulations, the defendant's alleged wrongdoing did not threaten the health or safety of the public at large."); Coyle v. College of Westchester, Inc., 166 A.D.2d 722, 723-24 (2d Dept. 2018) (upholding dismissal of whistleblower claim for failing to allege substantial and specific danger to public health or safety where plaintiff alleged she had reported concerns that many

---

[2](...continued)
County to Nebush, his direct supervisor[.]" Complt. at ¶ 32. Under that version of the statute, the Plaintiff likely would have stated a claim.

college faculty were not qualified for their positions and that "admissions advisors were improperly pressing students to enroll in advanced degree programs for which they were not qualified."); Klein v. Metropolitan Child Servs., Inc., 100 A.D.3d 708, 710 (2d Dept. 2012) (alleged conduct that "related mainly to alleged financial improprieties" did not qualify for whistleblower protection).

In his Complaint, Plaintiff alleges that he "identified violations of the Rules of Professional Conduct and HIPAA occurring within Oneida County to Nebush, his direct supervisor[.]" Complt. at ¶ 32.  These violations were related to information about clients of the Public Defender's Office and to improper accessing of such information by unauthorized county employees.  While that conduct may have been egregious and could have been the subject of discipline from appropriate authorities, the Court must find that Plaintiff has not alleged conduct that "creates a substantial and specific danger to the public health or safety." Webb-Weber, 23 N.Y.3d at 452.  The conduct did not present a significant risk of injury to the general public.  Under the version of the Whistleblower statute in place at the time, Plaintiff has failed to state a claim.  The Court will grant the motion in this respect.

## F.   Punitive Damages

Finally, Defendants argue that the law does not permit punitive damages against a municipality or employees of a municipality sued in their official capacities.  They seek dismissal of any punitive damage claims brought against such Defendants.  The Court agrees and will grant the motion with respect to any claims for punitive damages brought against the County or any Defendants sued in their official capacities.  See New Windsor Volunteer Ambulance Corps., Inc. v. Meyers, 442 F.3d 101, 122 (2d Cir. 2006)

(municipalities are immune from punitive damages, though municipal officials sued in their individual capacities may be liable for such damages); <u>Matter of Ken Mar Dev., Inc. v. Department of Pub. Works of City of Saratoga Springs</u>, 53 A.D. 1020, 1025 (3d Dept. 2008) (same under New York law).

### G.      Plaintiff's Request to Amend

As part of his response to Defendants' motion, Plaintiff included a "notice of motion," which purports to seek leave to amend the Complaint.  <u>See</u> dkt. # 16-1.  Local Rule 15.1 provides that on a motion to amend or supplement a pleading the proponent of such a motion "must attach an unsigned copy of the proposed amended pleading to its motion papers.  Except if the Court otherwise orders, the proposed amended pleading must be a complete pleading, which will supersede the pleading sought to be amended in all respects."  N.Y.N.D. L.R. 15.1.   Plaintiff's motion did not include this proposed amended pleading.  The motion also failed to follow the format and include the other papers required by Local Rule 7.1.  <u>See</u> N.Y.N.D. L.R. 7.1(b).

The Court will deny the motion for failure to follow the local rules.  In any case, the motion would be largely moot, as the motion was meant to include a statement about the Notice of Claim.  Neither party disputes that Plaintiff filed such a notice in a timely fashion. The argument in this matter was about whether the notice was adequate.  The Court has resolved that issue.

## IV.     CONCLUSION

For the reasons stated above, the Defendants' motion to dismiss, dkt. # 10, is hereby **GRANTED IN PART** and **DENIED IN PART**.  The motion is hereby **GRANTED**

with respect to Plaintiff's claims brought against any municipal departments of Oneida County, fraud claims against Defendant Rayhill, any claims brought pursuant New York Labor Law § 740, any claims for punitive damages raised against the County of Oneida and County of Oneida municipal departments and any individual Defendants sued in their official capacities.  The motion is hereby **DENIED** in all other respects.  The Clerk of Court is directed to terminate Defendants Office of the Oneida County Executive, Office of the Oneida County Public Defender, and Oneida County Attorney's Office.  Plaintiff's motion for leave to file an amended complaint, dkt. # 16, is hereby **DENIED.**

**IT IS SO ORDERED.**

**Dated:** September 19, 2022

Thomas J. McAvoy
Senior, U.S. District Judge